NAPIER v. WESTERHOFF et al.

(Circuit Court of Appeals, Second Circuit. May 9, 1916.)

No. 219.

CORPORATIONS ☞190—ACTIONS BETWEEN MEMBERS—EVIDENCE—SUFFICIENCY.
  Evidence in a suit where complainant asserted that, on incorporation of a business in which he was a partner, it was agreed that as between the parties the business should be conducted as a partnership, *held* insufficient to support that contention, or to bear out complainant's claims of misconduct and waste of assets by defendants.
  [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 723–731; Dec. Dig. ☞190.]

Appeal from the District Court of the United States for the Southern District of New York.

Bill by Thomas S. Napier against Peter D. Westerhoff and Henry Westerhoff, individually and as members of the firm of Westerhoff Bros. & Napier and as directors of the Westerhoff Bros. & Napier Company, and another. From a decree dismissing the bill, complainant appeals. Affirmed.

The final decree appealed from was entered June 20, 1912, dismissing the bill and supplemental bill.

Olney & Comstock, of New York City (J. N. Hayes, of New York City, of counsel), for appellant.

G. N. Hamlin and Charles E. Rushmore, both of New York City, for appellees.

Before COXE, Circuit Judge, and VEEDER and MAYER, District Judges.

MAYER, District Judge. This record of over 2,200 pages in a suit commenced in 1905, different phases of which have been passed on by Judges Ward, Holt, Hazel and Hough, demonstrates what was possible under the old method of trying equity causes. We venture to say that this case could have been tried, under the present rules, within a week, with greater satisfaction and much less expense to the litigants. The essential features of the controversy are covered in Judge Hough's opinion, but the length, and bitterness of the litigation require a brief expression of our views.

If we were to adopt the construction of the facts for which appellant contends, we should nevertheless affirm the decree on the law of the case; but a discussion of the questions of law argued by counsel becomes unnecessary because of our conclusions as to what the record demonstrates in respect of the facts.

The original bill, verified January 24, 1905, sets forth that Napier and Henry and Peter D. Westerhoff were partners from 1895; that about July 1, 1900, the Westerhoffs proposed that the existing firm should carry on its business as to the outside world as a corporation, but as to themselves, i. e., Napier and the Westerhoffs, as a partnership; that Napier, though reluctant to enter into such an arrangement, consented upon the express condition that he should share in the management of the corporation equally, should be and continue a director and officer thereof, should be sole selling agent of all the product of the corporation, and, if he desired to withdraw, that he should first offer his stock for sale to the Westerhoffs, and that they would buy the same and pay him the value of his interest as if he were a retiring partner, or sell him their interests on a like basis.

In pursuance of this understanding, as Napier alleges, a New Jersey corporation was organized early in August, 1900, with an authorized capital stock of $100,000, divided into $1,000 shares, of which 333 were allotted to Napier, 333 to Peter, and 334 to Henry Westerhoff. Thereafter, as the bill continues, the corporation adopted the contract made by Napier on his own behalf and that of the partnership with the commission house of Spielman & Co., on July 31, 1900. The bill then charges various acts by the Westerhoffs in violation sooner

or later of every detail of the agreement and understanding, all for the purpose of forcing Napier out of the corporation, depreciating the value of his stock, and destroying his exclusive selling agency. As a result, according to Napier, he was wrongfully deprived of being sole sales agent, driven out of the corporation, impoverished and ruined by the conduct of defendants Peter and Henry, who were now aided by Harris Westerhoff, a relative, who had been brought into the corporation. The relief asked is a decree adjudging the Westerhoffs to be Napier's copartners, and the stock of the corporation to be copartnership assets, and directing an accounting and the appointment of a receiver of the assets of the corporation.

A supplemental bill, verified March 15, 1906, alleges, in effect, a continuation of the acts complained of in the original bill, failure to pay dividends, and wasteful conduct of the business and funds for the benefit of the Westerhoffs. The facts developed in the record controvert in every detail the charges of wrongful conduct made against defendants.

After some unsuccessful experiences, Peter and Henry Westerhoff began the business of manufacturing silks in Paterson, N. J., in 1894, under the name of Westerhoff Bros. Their capital was about $3,200 and they started with 4 looms. In May, 1895, they had 35 looms and approximately in plant and stock $8,000 to $12,000. Napier was selling silks in a small way, and after some solicitation, a promise from Peter against the desire, at first, of Henry, an assertion by Napier that he could sell a lot of goods, and a statement that he would put $2,000 into the business, the Westerhoffs agreed to take him into partnership. The partnership agreement was made on May 1, 1895, and its main features were as follows (Henry being party of the first part, Peter the second, and Napier the third):

"Second. That the parties of the first part and second part shall allow one-third interest in the aforesaid firm of Westerhoff Bros. upon the payment of two thousand dollars ($2,000) * * * to said Thomas S. Napier, party of the third part, to be paid to the aforesaid firm to be used in the business.

"Third. The parties of the first and second part shall manage and devote their whole time to the business and shall receive as salary therefor eighteen dollars ($18) per week, or nine hundred and thirty-six dollars ($936) per year, and keep careful books and accounts for the inspection of all parties herein mentioned.'

"Fourth. That the partnership shall expire on May 1, 1897. Any party or parties herein mentioned wishing to renew or withdraw from said firm at the expiration of said partnership shall give two months' written notice to the firm.

"Fifth. That no profits or money shall be drawn out of this business for the time of this partnership.

"Seventh. The party of the third part shall make payments for his interest in said firm as follows: First payment, May 1, 1895, $700.00; second, June 1, 1895, $200; third, July 1, 1895, $200.00; fourth, August 1, 1895, $200.00; fifth, September 1, 1895, $200.00; sixth, October 1, 1895, $200.00; seventh, November 1, 1895, $200.00; eighth, December 1, 1895, $100.00; total $2,000.00. When fully paid his interest shall be one-third interest partner in said firm."

It will be noted that the Westerhoffs are to "manage" the business and devote their whole time to it, and there is no suggestion that Napier was to be the sole and exclusive selling agent. As time went on the Westerhoffs were not pleased with Napier as a salesman, nor

with his way of doing business, and, finally, a crisis came in 1900, when the Westerhoffs learned that Napier, who was selling goods through the commission house of Wendt, Steinhauser & Co., had overdrawn his account with that house to the extent of over $5,000 and that the Wendt concern claimed that his interest in the firm was responsible for this sum and deducted it from the account current payable to the Westerhoff firm.

Thereupon Henry Westerhoff insisted, as he had the right to (the partnership being terminable on two months' notice), that the firm should be dissolved or a corporation formed. It was manifest that, if conduct of this kind were continued by Napier, the business would be seriously affected, and perhaps ultimately destroyed. Defendants testified that Napier yielded his unconditional assent to the incorporation, while Napier claims that it was granted only upon the conditions set forth in his bill.

On July 1, 1900, the books showed assets of $105,000. This rather remarkable growth was attained, not merely because of the ability of the Westerhoffs, but because they permitted the profits to accumulate and practiced a large measure of self-denial, allowing to themselves only $18 a week at first, and never more than about $1,200 to $1,300 per annum. Napier, however, was making in some years $15,000 as net earnings from the sale of the merchandise manufactured by the partnership.

The corporation was formed under the name of "Westerhoff Bros. & Napier Company"; the certificate of incorporation, dated July 31, 1900, having been filed August 2, 1900. The claim of Napier is that the terms which he asserts were imposed as a condition of the incorporation were the subject-matter of discussion with and consent by Peter Westerhoff. This testimony is not only contradicted by both of the Westerhoffs, but also by Reynolds and Campbell, disinterested witnesses, and by the probabilities of the case as shown by all the surrounding circumstances. Reynolds was the attorney who drew up the incorporation papers and Campbell was his associate. Napier signed the incorporation papers, all the formal routine was gone through with, and Napier heard the by-laws read section by section, but never said a word about the alleged partnership agreement.

Without further elaboration of detail, we are entirely satisfied that there never was any agreement in any of the respects claimed by Napier, and, in any event, that Napier has fallen far short of proving one. So, likewise, as to the alleged agreement that he should be exclusive selling agent, or the alleged scheme of defendants to deprive him of the right of being the exclusive selling agent. He had not been such prior to incorporation, and the incorporation was not undertaken for any unfair purpose, nor with any preconceived wrongful design, but solely to put the business in a safeguarded legal position, rendered necessary by Napier's actions and well justified by the industry and economy of the Westerhoffs. Napier's subsequent conduct made his continuance impossible, and invited the loss of confidence in him and the action of the majority stockholders in the fall of 1904, by which he was ousted as an officer, director, or selling agent.

Many of the charges as to waste and misconduct relate to alleged transactions after the original bill was filed. When examined, it will be found that these charges have no substance. In course of time the business and the books were put into an orderly businesslike condition, and during the lean days the Westerhoffs acted conservatively, as they had to, in respect of the declaration of dividends. Napier claims that he was deprived of dividends because the corporation paid the Westerhoffs increased salaries and paid the expenses incident to this litigation. Napier's share on this theory would have been about $1,000 per annum at most. The Westerhoffs' raise of salary was $1,050 per annum each—a well-deserved and modest increase. The corporation, whose very life was being attacked, had the right to expend reasonable law expenses for defense; but, nevertheless, the Westerhoffs have credited the amounts due them for their salary in discharge of these expenses.

After this suit was commenced, and Napier had been unsuccessful in other enterprises, he and his then partner made an assignment on August 12, 1908, to one Barnard and one Lotte, as trustees, of—

"all their assets, claims, demands, causes of action, policies of insurance, * * * real estate, * * * stock in any and all corporations, and any and all property of whatever nature and description and whatsoever situated, owned by the debtors individually or as members of any firm, * * * excepting, however, any and all household furniture and wearing apparel of the debtors, in trust nevertheless to convert such property into money."

Defendants contend that by virtue of this assignment the suit has abated, and so the District Court held. This is probably true, but we need not pass on this question, because on the facts we find no merit whatever in any of plaintiff's claims, and, on the contrary, we are of opinion that the actions of defendants were with full power and wholly justified, and that, if the business is now prosperous, it is such because of the hard work, intelligence, and self-denial of defendants, and not because of any wrong inflicted by them upon plaintiff.

We find it unnecessary to analyze at length the mass of testimony contained in this record, or to add anything further to the conclusions as to the facts outlined in the opinion of the District Judge.

The decree is affirmed, with costs.